UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PHILIPS ORAL HEALTHCARE, INC.,
f/k/a OPTIVA CORPORATION,

                Plaintiff,

      v.

FEDERAL INSURANCE COMPANY,

                Defendant.

CASE NO. C98-1211JLR

ORDER

## I.  INTRODUCTION

This matter comes before the court on Plaintiff Philips Oral Healthcare, Inc.'s ("Philips") Motion for Partial Summary Judgment Re: Intentional Falsehoods Exclusion (Dkt. # 525), Motion for Partial Summary Judgment Re: Federal's Prior Acts Exclusion (Dkt. # 528), and Motion for Entry of Judgment (Dkt. # 529); and Defendant Federal Insurance Company's ("Federal") Motion for Summary Judgment Based on the "Prior Acts" Exclusion (Dkt. # 530).  Having read and considered the motions together with all the documents filed in support and opposition to these motions, and having heard oral argument, the court GRANTS Philips' motions for summary judgment regarding the intentional falsehoods and prior publication policy exclusions, DENIES Philips' motion for entry of judgment, and DENIES Federal's motion for summary judgment regarding the prior publication policy exclusion.

ORDER – 1

## II.   BACKGROUND

After six and one-half years of litigation, multiple summary judgment rulings, and a round-trip visit to the Ninth Circuit, the parties and this court are familiar with the extensive procedural and factual history of this case.  For purposes of this final round of summary judgment motions, the court will only address the relevant facts bearing on the issue of policy exclusions and incorporate by reference prior orders setting forth the case's lengthy history.  Order Denying Summ. J. on Indemnity, Dkt. # 468 (Sept. 22, 2004) ("Indemnity Order"); Order Denying Mot. for Recons., Dkt. # 494 (Nov. 2, 2004); Order Granting Summ. J. on Allocation, Dkt. # 499 (Dec. 1, 2004) ("Allocation Order"); Order Denying 28 U.S.C. § 1292(b) Certification, Dkt. # 520 (Jan. 14, 2005).

In November 1992, Philips (f/k/a the Optiva Corporation) launched the Sonicare® toothbrush to dental professionals at the American Academy of Periodontology ("AAP") conference.  As part of its business plan, Philips sent postcards to periodontists before the meeting advertising a demonstration at the upcoming convention of the "new electronic plaque remover that reaches beyond . . . ," and Sonicare® toothbrushes to 24 leading periodontists throughout the nation.  Neal Decl., Exh. 14.  At the AAP conference, Philips set up a sales booth where it distributed a one-page abstract and flyer advertising the new Sonicare® toothbrush.  The abstract highlighted a recent study evidencing the alleged benefits of using "low-frequency acoustic energy" to help prevent and control periodontal disease, while the flyer claimed that Sonicare® set a "new standard" that "takes plaque removal beyond the bristles" with "unique sonic frequency action."  Id., Exh. 4, 12.  Philips sold several hundred Sonicare® toothbrushes at the convention and followed up afterward by sending additional promotional postcards[1] and copies of the abstract to participants.  Philips' packaging and owner's manual during this time touted

---

[1]These postcards offered a special price for "the new high frequency electronic plaque-remover."  Neal Decl., Exh. 14.

ORDER – 2

Sonicare® as a "new breakthrough" with the ability to use "high frequency" technology to generate "a penetrating foam that reaches beyond the bristles." Id., Exh. 19.[2]

Prior to launching Sonicare® to consumers, Philips applied for and obtained a one-year commercial general liability insurance policy from Federal in December 1992. Federal's insurance policy took effect on January 6, 1993 and provided Philips with coverage against any "advertising injury"[3] committed during the policy period. Among other things, the Federal policy excluded coverage for any advertising injury:

> 1. arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity ("intentional falsehoods" exclusion);
> 2. arising out of oral or written publication of material whose first publication took place before the beginning of the policy period ("prior publication" exclusion) . . . .

Manzione Decl., Exh. A. Although Federal ultimately issued six consecutive one-year policies to Philips providing coverage until 1999, only the policies from 1993 to 1996 provide coverage in this case. Indemnity Order, at 9; Philips Oral Healthcare, Inc. v. Fed. Ins. Co., No. 03-35019, slip op. at 7 (9th Cir. Dec. 17, 2003). None of the policies define "material" as used in the intentional falsehoods or prior publication exclusions.

The scope and availability of Philips' insurance coverage became an issue in the late 1990s when Philips' rival competitor, Gillette[4], filed two lawsuits against it alleging Philips had engaged in false and misleading advertising of Sonicare®. The first action ("G-1") ended in a jury verdict for Gillette, while the second action ("G-2") ended in

---

[2]The court notes that local Seattle area newsletters and papers also carried short articles about the development and potential benefits of Sonicare® in 1992, including the University of Washington Regional Clinical Dental Research Center newsletter, the Mercer Island News, the Seattle Weekly, and the Eastside Week. Neal Decl., Exh. 24-27.

[3]The policy defines "advertising injury" in relevant part, as an oral or written publication that "slanders or libels . . . or disparages a person's or organization's goods, products or services." Manzione Decl., Exh. A.

[4]Gillette manufactures the Braun Oral-B Plaque® Remover.

ORDER – 3

settlement.  Philips sought indemnification from Federal for G-2, which provides the underlying basis for this suit.  In G-2, Gillette challenged Philips' advertisements touting Sonicare®'s "purported 'sonic' waves that operate beyond the reach of the bristles" and Philips' claims that it exclusively possessed such features and used "sonic" technologies to achieve them.  Neal Decl., Exh. 2.  Gillette listed six Sonicare® advertisements in its complaint, "among others," that used "sonic" or "beyond the bristles" claims to allegedly disparage Gillette.  During discovery, Gillette identified a total of 340 Sonicare® advertisements allegedly falsely advertising "sonic" or "beyond the bristles" benefits.  Gellert Supp. Decl., at 6-129.  Philips issued at least 85 of these advertisements from 1993 to 1996.  Indemnity Order, at 9.

Previously, this court held that Federal has a duty to indemnify Philips for the 85 Sonicare® advertisements allegedly disparaging Gillette and that no reasonable basis exists for allocating between Philips' covered and uncovered losses.  Indemnity Order, at 9; Allocation Order, at 7-9.  By filing the present motions, the parties seek the court's determination on whether the "prior publication" or "intentional falsehood" exclusions bar Philips from otherwise obtaining coverage.

## III.    DISCUSSION

### A.    Legal Standard

Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial responsibility, the burden shifts to the non-moving party to establish that a genuine issue as to any material fact exists.  Matsushita

ORDER – 4

1   Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Evidence

2   submitted by a party opposing summary judgment is presumed valid, and all reasonable

3   inferences that may be drawn from that evidence must be drawn in favor of the non-

4   moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The non-

5   moving party cannot simply rest on its allegation without any significant probative

6   evidence tending to support the complaint.  See U.A. Local 343 v. Nor-Cal Plumbing,

7   Inc., 48 F.3d 1465, 1471 (9th Cir. 1995).  "[A] complete failure of proof concerning an

8   essential element of the non-moving party's case necessarily renders all other facts

9   immaterial."  Celotex, 477 U.S. at 322-23.

10  **B.    Effect of the Court's Prior Allocation Order**

11          As a threshold matter, the parties' cross-motions for summary judgment raise the

12  fundamental question of whether the court's prior order on allocation requires Federal to

13  prove that the policy exclusions at issue bar coverage for every Sonicare® advertisement,

14  running from 1993 to 1996, in order to be relieved of its duty to provide coverage.

15  Previously, the court held that allocation was inappropriate under Washington law

16  because "Philips' covered and uncovered losses arise from the same factual core" and

17  Federal's proposed method of allocation offered "an unreasonable basis of allocation . . .

18  unprecedented under Washington case law."  Allocation Order, at 7, 8.[5]  Both parties

19  agree, and the court expressly finds, that the court's allocation order requires Federal to

20  prove that all 85 Sonicare® advertisements are excluded from coverage.  This result is

21  required by both Washington law on allocation, and the unique context of advertising

22  from which this case arises.

23

24  ——————————————

25          [5]Finding summary judgment appropriate on other grounds, the court did not consider
    Philips' alternative argument that allocation is not required where an insurer, such as Federal, "has
26  made no attempt to separate out the portion of the settlement amount for which it was liable."
    Nordstrom, Inc. v. Chubb & Son, Inc., 54 F.3d 1424, 1430 (9th Cir. 1995) (citing Prudential
27  Prop. & Cas. Ins. Co. v. Lawrence, 724 P.2d 418, 424 (Wash. 1986)).

28

ORDER – 5

**C.      Federal's Policy Exclusions**

Sitting in diversity, the court finds that Washington law governs this insurance coverage dispute.  <u>Allstate Ins. Co. v. Hughes</u>, 358 F.3d 1089, 1094 (9th Cir. 2003).  In Washington, the general rules for interpreting insurance policies are well established.  <u>Nat'l Union Fire Ins. Co. v. Zuver</u>, 750 P.2d 1247, 1248 (Wash. 1988).  Courts must interpret insurance policies as a whole and construe policy language in "the way it would be understood by the average person."  <u>Am. Star Ins. Co. v. Grice</u>, 854 P.2d 622, 625 (Wash. 1993).  Clear and unambiguous terms must be enforced, while ambiguous provisions are construed against the drafter.  <u>Zuver</u>, 750 P.2d at 1248.  Courts interpret undefined terms according to their "plain, ordinary, and popular" meaning, which may be found in standard English dictionaries.  <u>Lynott v. Nat'l Union Fire Ins. Co.</u>, 871 P.2d 146, 153 (Wash. 1994) (quoting <u>Farmers Ins. Co. v. Miller</u>, 549 P.2d 9, 11 (Wash. 1976)).  Ambiguity exists when policy language is "fairly susceptible to two different interpretations, both of which are reasonable."  <u>McDonald v. State Farm Fire & Cas. Co.</u>, 837 P.2d 1000, 1004 (Wash. 1992).

The critical question for determining whether a policy exclusion applies is "whether the exclusionary language of the policy is ambiguous."  <u>Id</u>.  The general rule strictly construing ambiguous provisions against the drafter "applies with added force to exclusionary clauses which seek to limit policy coverage."  <u>Lynott</u>, 871 P.2d at 153 (quoting <u>Grice</u>, 854 P.2d at 625).  Courts will not extend policy exclusions "<u>beyond their 'clear and unequivocal' meaning</u>."  <u>Id</u>. (emphasis in original).

**1.      Intentional Falsehoods Exclusion**

Philips moves for partial summary judgment on Federal's alleged failure to show that the "intentional falsehoods" policy exclusion bars coverage in this case.  Both parties agree that Federal bears the burden of proving that Philips issued Sonicare® advertisements that it knew were false at the time of publication.  The parties disagree,

ORDER – 6

1   however, on the appropriate quantum of proof under Washington law.[6]  Philips argues

2   that Federal must bring forth "clear, cogent, and convincing" evidence of intentional

3   falsehoods, while Federal argues it must only satisfy the "preponderance" of the evidence

4   standard.

5          Although no Washington courts appear to have addressed this issue, Philips

6   contends that the same standard that governs all misrepresentation claims in Washington

7   – the "clear, cogent, and convincing" standard – should dictate Federal's burden of proof

8   in this case.  E.g., Trimble v. Wash. State Univ., 993 P.2d 259, 264 (Wash. 2000)

9   (applying "clear, cogent, and convincing" standard to negligent misrepresentation claim);

10  Markov v. ABC Transfer & Storage Co., 457 P.2d 535, 539 (Wash. 1969) (applying same

11  standard to fraud claim).  In response, Federal argues that the "usual 'preponderance of

12  the evidence' standard" applies because this case involves product disparagement, rather

13  than fraud.  Fed. Opp., at 4.  Yet, Federal's policy exclusion requires it to prove Philips

14  engaged in intentional falsehoods, not product disparagement.  Given that Federal's claim

15  of intentional falsehoods is most akin to a claim for negligent or intentional

16  misrepresentation under Washington law, the court finds that the "clear, cogent, and

17  convincing" standard applies.

18         As established by the G-2 complaint and the court's prior orders, Gillette

19  challenged Philips' use of two phrases in the underlying litigation – "sonic" and "beyond

20  the bristles" – to make a multitude of claims about the purported benefits of Sonicare®.

21  Neal Decl., Exh. 2 (G-2 Compl.); Gellert Suppl. Decl., at 6-129 (Gillette's appendix

22  listing 340 advertisements at issue).  Federal argues, and Philips does not appear to

23  dispute, that Sonicare®'s inventors used "sonic" interchangeably with "beyond the

24

25

_____

26         [6]Under the Erie doctrine, the burden of proof on a particular claim or issue is
    "substantive" and therefore governed by state law.  See Am. Dredging Co. v. Miller, 510 U.S.
27  443, 454 (1994) (recognizing burden of proof as substantive); Mayer v. Gary Partners & Co., 29
    F.3d 330, 333 (7th Cir. 1994) (same).
28

ORDER – 7

1   bristles" to describe the fluid dynamics generated by Sonicare® to remove plaque.[7]

2   Federal contends that Philips' "beyond the bristles" and "exclusivity" claims are false as

3   a matter of law based on admissions of one of Sonicare®'s creators, Dr. Christopher

4   McInnes, the G-1 jury verdict, and the American Dental Association's ("ADA") decision

5   to withdraw its seal of approval from Sonicare®.  The court finds that this evidence is

6   insufficient to show that falsity exists as a matter of law for all 85 Sonicare®

7   advertisements for which coverage exists.

8          Both Dr. McInnes' admissions and the G-1 jury verdict occurred after the relevant

9   coverage period, January 6, 1993 to January 5, 1996.  To prove that the intentional

10  falsehoods exclusion bars coverage, Federal must show that Philips issued Sonicare®

11  advertisements that it knew were false at the time of publication.  Dr. McInnes'

12  admissions are contained in a report dated September 16, 2002 that was expressly

13  "[b]ased on currently available, applicable, valid, scientific evidence."  Neal Decl., at

14  288, 291.  The single study Dr. McInnes relies on as a basis for his admissions is a

15  "manuscript in preparation for submission."  Neal Decl., at 288.  There is no evidence in

16  the record suggesting that this study was conducted during the 1993 to 1996 time frame,

17  or that Dr. McInnes knew about it at that time.  Consequently, Federal cannot rely on Dr.

18  McInnes' admissions in a 2002 report to show that Philips' 1993-1996 advertisements

19  were false at the time of publication.  Similarly, Federal cannot rely on the G-1 jury

20  verdict to prove falsity as a matter of law when the case was not even filed until 1998.[8]

21

22  ─────────────

23          [7]Dr. Engel, one of Sonicare®'s inventors, testified at his deposition that "sonic" refers to
    the "bristle velocity" used to generate "fluid forces" to remove plaque and other bacteria.  Neal

24  Decl., at 19-20.

25          [8]Moreover, the court notes that the G-1 litigation involved different Sonicare®
    advertisements than those at issue in the G-2 litigation, and the court's jury instructions in G-1

26  permitted the jury to find that the advertisements were implicitly false, meaning "literally true but
    nevertheless likely to confuse consumers," rather than actually false as required by the intentional

27  falsehoods exclusion.  Gellert Supp. Decl., at 6.

28

    ORDER – 8

1    Federal's reliance on the ADA's decision to withdraw its seal of approval from

2    Sonicare® is also misplaced.  Federal's proof consists of correspondence from the ADA,

3    as well as deposition testimony from Dr. David Engel, one of Sonicare®'s inventors.

4    Setting aside the fact that the correspondence from the ADA is likely hearsay to the

5    extent Federal offers it to prove the truth of the matter asserted (actual falsity), it is

6    insufficient to create a material issue of fact that the multitude of advertising claims

7    contained in the 85 Sonicare® advertisements covered by Federal's policy are actually

8    false.  At most, the ADA's recommendations that Philips delete or modify seven different

9    advertising claims during the coverage period, such as Sonicare® "whitens teeth" or

10   "whips toothpaste into a penetrating (rather than plaque-fighting) foam," suggests that

11   those particular claims may have been false, but it does not even begin to address the

12   multitude of remaining advertising claims contained in the 85 challenged advertisements.

13   <u>Compare</u> Neal Decl., Exh. 27 (ADA correspondence), <u>with</u> Gellert Suppl. Decl., at 6-129

14   (Gillette's appendix of challenged claims).

15       Dr. Engel's testimony also fails to establish that a genuine issue of fact exists

16   regarding falsity.  Drawing all reasonable inferences in favor of Federal, Dr. Engel's

17   testimony reveals that he knew the ADA had concerns about Philips' scientific support

18   for previously approved claims and that he started working with the ADA to alleviate

19   those concerns during the coverage period.[9]  Neal Decl., at 68, 70.  Although this

20   deposition testimony may bear on Dr. Engel's knowledge at the time, it does not

21   demonstrate that Philips' advertising claims were actually false.  Federal's failure to

22   provide expert testimony establishing that a material issue of fact exists regarding Philips'

23

24

25   _____

26       [9]The majority of Philips' efforts to alleviate the ADA's concerns occurred after the policy
     period providing coverage expired on January 5, 1996.  For example, Philips provided written
27   materials supporting its advertising claims to the ADA on January 8, 1996, and conducted a
     formal presentation for the ADA council on February 14, 1996.  Neal Decl., at 70-71.
28

ORDER – 9

1   allegedly false advertisements is particularly striking given the highly-sophisticated,

2   patented technology at issue in this litigation.

3       Having found that Federal has failed to provide sufficient evidence to suggest that

4   a genuine issue of material fact exists on a required element for the intentional falsehoods

5   exclusion to apply – falsity – the court need not consider whether Federal has brought

6   forth sufficient evidence to establish that a material issue of fact exists regarding the

7   second element, Philips' knowledge at the time of publication.  Consequently, the court

8   GRANTS Philips' motion for partial summary judgment on intentional falsehoods.

9           **2.      Prior Publication Exclusion**

10      Both parties have moved for summary judgment regarding the application of

11  Federal's prior publication exclusion.  If the exclusion applies, then Federal's obligation

12  to indemnify Philips disappears.  Although Washington courts have yet to consider an

13  insurance coverage dispute involving a prior publication exclusion, a small number of

14  courts from other jurisdictions have addressed this issue and have not reached a

15  consensus.

16      The most recent decision, <u>Taco Bell Corp. v. Cont'l Cas. Co.</u>, hails from the

17  Seventh Circuit where Judge Posner, writing for the court, held that the prior publication

18  exclusion did not relieve an insurance company of its duty to defend the insured (Taco

19  Bell) against misappropriation claims.  388 F.3d 1069 (7th Cir. 2004).  In the underlying

20  litigation, a design agency filed suit against Taco Bell for allegedly misappropriating its

21  idea of using a "Psycho Chihuahua" obsessed exclusively with Taco Bell food to

22  advertise its business.  <u>Id</u>. at 1072.  The insurance company argued that the prior

23  publication exclusion, with language identical to the one at issue here, barred coverage

24  because Taco Bell's first "Chihuahua" commercials began running before the policy took

25  effect.  <u>Id</u>.  The court disagreed, reasoning that the exclusion did not apply because the

26  design agency's complaint alleged that Taco Bell's later commercials "appropriated not

27  only the 'basic idea' ("Psycho Chihuahua") but other ideas as well," including the idea of

28  a Chihuahua poking its head through a hole at the end of a commercial.  <u>Id</u>. at 1073.  The

ORDER – 10

1    court recognized that at some point the difference between the republished version of an

2    allegedly unlawful work and the original version may be so slight as to be immaterial,

3    "[b]ut that observation cannot save the insurer when the republication contains new

4    matter that the plaintiff in the liability suit against the insured alleges as fresh wrongs."

5    Id.

6         The California Court of Appeals took a different view in Ringler Assoc. Inc. v.

7    Maryland Cas. Co., 96 Cal. Rptr. 2d 136 (Cal. Ct. App. 2000).  In Ringler, the insured

8    argued that a prior publication exclusion (also with the exact language at issue here) was

9    ambiguous and should be strictly construed against the insurer because it failed to define

10   the terms "material" and "first publication."  Id. at 148.  The court disagreed and

11   construed "material" in the context of the underlying litigation in which it arose –

12   defamation.[10]  Id. at 148-50.  Based on general principles of defamation law, the court

13   held that the exclusion barred coverage of "republication of any identifiably defamatory

14   'material' whenever the first publication of substantially the same material occurred

15   before the inception of the policy period, without regard to whether or not the defamatory

16   material is literally restated in precisely the same words."  Id. at 150 (emphasis in

17   original).  The court applied the prior publication exclusion to bar coverage because the

18   record showed that the alleged defamations occurred prior to the policy taking effect and

19   neither the plaintiffs' complaints, nor discovery in the underlying litigation, suggested

20   that the insured made specific alleged defamatory remarks during the policy period.  Id. at

21   152.

22        Beyond Taco Bell and Ringler, few courts have considered when to exclude

23   insurance coverage based on prior publication.  The only Ninth Circuit jurisprudence

24   considering this exclusion consists of short and unpublished decisions upon which this

25   _____

26        [10]The plaintiffs in the underlying litigation alleged generally that the insured made
     defamatory statements about their business without identifying any specific statements.  Id. at
27   143.

28

ORDER – 11

1   court cannot rely.[11]  Regardless, this court is bound by Washington law and therefore
2   must focus its inquiry on whether the prior publication exclusion is ambiguous.
3   McDonald, 837 P.2d at 1004.
4         Both parties' positions, while clearly different, turn on the court's construction of
5   "material," a term undefined by the prior publication exclusion or policy as a whole.
6   Philips urges the court to find the exclusion ambiguous because "material" is subject to
7   multiple reasonable interpretations, as evidenced by the inconsistent prior positions taken
8   by Federal in this litigation[12] and the testimony of Federal's Fed. R. Civ. P. 30(b)(6)
9   witness.  Upon finding the exclusion ambiguous, Philips argues that the court should
10  interpret "material" narrowly to mean that the exclusion bars coverage for pre-policy
11  Sonicare® advertisements that are the "same" as post-policy advertisements, relying on
12  Taco Bell.[13]  Federal, on the other hand, argues that the exclusion is unambiguous and
13  that the court should rely on Ringler to exclude coverage of all Sonicare® advertisements,
14  running from 1993 to 1996, because they contain "substantially similar" claims as pre-
15  policy advertisements touting Sonicare®'s "sonic" and/or "beyond the bristles" benefits.
16        Although the Ringler court construed "material" in context of defamation (the
17  legal claim at issue in the underlying litigation), this court is bound by Washington law
18
19        [11]Under 9th Cir. R. 36-3, this court may not cite unpublished decisions of the Ninth Circuit
20  unless they pertain to the law of the case, collateral estoppel, res judicata, are necessary for
21  factual purposes, are part of a publication request, or part of a petition for re-hearing.  None of
    those circumstances apply here.
22
23        [12]Philips notes that Federal previously contended in 2002 that the Sonicare®
    advertisements at issue in the G-2 litigation could be divided into at least 28 different categories,
24  while Federal now contends that the advertisements at issue fall into two categories, "sonic"
    and/or "beyond the bristles."  Compare Gellert Decl., at 47-50, with Fed. Mot. for Summ. J., at 8.
25
26        [13]Additionally, Philips relies on an unpublished, out-of-circuit case to support its position.
    Int'l Communication Materials, Inc. v. Employer's Ins. of Wausau, No. 94-1789, 1996 WL
27  1044552, at *4 (W.D. Pa. 1996) (holding prior publication exclusion did not bar coverage of
    post-policy advertisements sharing the same "theme" as pre-policy advertisements).
28

ORDER – 12

1   which requires it to consider the prior publication exclusion from the perspective of an

2   average person and interpret any undefined terms by their "plain, ordinary, and popular"

3   meaning.  Lynott, 871 P.2d at 152-53.  The court notes from the outset that the term

4   "material" does not lend itself easily to being defined in plain language.  Federal

5   recommends that the court adopt the definition of "material" contained in Webster's

6   Third New International Dictionary (1993) – i.e., "something (as data, observations,

7   perceptions, ideas) that may through intellectual operation be synthesized or further

8   elaborated or otherwise reworked into a more finished form or a new form or that may

9   serve as the basis for arriving at fresh interpretations or judgments or conclusions"  – a

10  practice endorsed, but not required, by Washington courts.  Id. at 153-54 (considering

11  various dictionary definitions of "acquisition" and holding that "[e]ach is a reasonable

12  construction of an ambiguous term.").  Based on these definitions, material may mean an

13  idea reworked to create a new idea, an idea elaborated on to create a more complete idea,

14  an idea that provides the basis for arriving at a different conclusion, or a variety of other

15  meanings.[14]  Federal's own Fed. R. Civ. P. 30(b)(6) representative, whom Federal

16  characterizes as "an above-average insurance company claims handler," conceded at his

17  deposition that "material" is a "generic word" that "could mean a lot of things."  Gellert

18

19

20

21
_____

22  [14]Philips' recurring claim that Sonicare® provides "beyond the bristles" benefits provides a
    helpful illustration of the number of reasonable ways advertising "material," such as "beyond the
23  bristles," may be reworked and synthesized to communicate a variety of different claims.  For
    example, Gillette objected to Sonicare® advertisements issued from 1993 to 1996 describing the
24  distance Sonicare® reached "beyond the bristles" ("up to 4mm," Ad. No. 11), the way Sonicare®
    cleaned "beyond the bristles" (sonic vibrations "transform ordinary toothpaste into a penetrating
25  foam that reaches beyond the bristles," Ad No. 8), the results of "beyond the bristles" cleaning
    (whiter and plaque-free teeth, Ad. No. 50), the research supporting "beyond the bristles" cleaning
26  ("[r]esearch studies show . . . ," Ad No. 2), and other allegedly disparaging claims.  Gellert Supp.
    Decl., at 6-129.
27

28

ORDER – 13

1   Decl., at 31.[15]  Given that "material" is susceptible to different, reasonable interpretations,

2   the court finds the term ambiguous and therefore must construe it strictly against the

3   insurer.  Lynott, 871 P.2d at 153.

4          Under Washington law, courts cannot extend ambiguous policy exclusions beyond

5   their "'clear and unequivocal' meaning."  Lynott, 871 P.2d at 153 (quoting Grice, 854

6   P.2d at 625) (emphasis in original).  Following this instruction, the court construes the

7   prior publication exclusion in favor of the insured to bar coverage of any Sonicare®

8   advertisement, running from 1993 to 1996, that is the same as a Sonicare® advertisement

9   issued prior to the policy taking effect.  Construing "material" to mean "substantially

10   similar," as Federal argues, would require the court to interpret the scope of the prior

11   publication exclusion broadly, rather than narrowly, as required by Washington law.  Id.

12   If Federal intended to limit its insurance coverage to exclude post-policy Sonicare®

13   advertisements that were "substantially similar" (or contained the "same defamatory

14   substance") as pre-policy Sonicare® advertisements, then it could have used such

15   qualifying language.  Id. at 151 ("In evaluating the insurer's claim as to meaning of

16   language used, courts necessarily consider whether alternative or more precise language,

17   if used, would have put the matter beyond reasonable question.") (quoting 13 John A.

18   Appleman & Jean Appleman, Insurance Law & Practice § 7403 (1976)).

19          Applying the above construction of the prior publication exclusion, the court finds

20   that none of Philips' pre-policy advertisements – the promotional postcards, flyer, one-

21   page abstract, packaging, and owner's manual – are the same as the 85 post-policy

22   advertisements triggering Federal's duty to indemnify Philips.  Gillette does not appear to

23   have included either the promotional postcards or the flyer handed out at the AAP

24   _____

25          [15]Although Federal's representative provided this answer in response to a question asking
26   him to construe "material" in the context of the intentional falsehoods exclusion, the court finds
      that this answer applies with equal force here.  Both policy exclusions exclude coverage for
27   advertising injuries "arising out of oral or written publication of material . . . ."  Manzione Decl.,
      Exh. A.

28

ORDER – 14

1    convention booth in its list of 340 challenged advertisements.  Although Gillette included

2    the one-page abstract in its overall list of challenged advertisements, Philips did not

3    include it in the list of 85 advertisements, running from 1993 to 1996, which this court

4    held triggered coverage.  Finally, Gillette did not object to the 1992 Sonicare® packaging

5    and owner's manual, although the court notes their substantial similarity to later versions

6    complained of by Gillette.  Compare Neal Decl., Exh. 19 (1992 version), with Exh. 22

7    (1995 version).  Thus, the court finds that the prior publication exclusion does not relieve

8    Federal of its duty to provide coverage in this case for Philips' post-policy Sonicare®

9    advertisements and GRANTS summary judgment in favor of Philips on this issue.

10   **D.    Philips' Motion for Entry of Judgment**

11       Although the court finds in Philips' favor and holds that neither policy exclusion

12   bars coverage in this case, the court DENIES Philips' motion for entry of judgment.

13   Philips must file a proposed judgment with supporting briefing, not exceeding eight

14   pages, establishing the exact terms of the judgment within seven judicial days of this

15   order.  Federal may file a response to Philips' proposed judgment, not exceeding eight

16   pages, within seven judicial days of receiving Philips' submission.

17                          **IV.   CONCLUSION**

18       For the reasons stated above, the court GRANTS Philips' Motions for Partial

19   Summary Judgment Re: Intentional Falsehoods Exclusion (Dkt. # 525) and Prior Acts

20   Exclusion (Dkt. # 528), DENIES Philips' Motion for Entry of Judgment (Dkt. # 529), and

21   DENIES Defendant's Motion for Summary Judgment Based on the "Prior Acts"

22   Exclusion (Dkt. # 530).  Given that this order resolves all of the major remaining issues in

23

24

25

26

27

28

ORDER – 15

1  dispute, the court strikes the upcoming trial date and motions in limine.[16]  The only issues

2  remaining for the parties and this court to consider are the exact terms of judgment.

3       Dated this 26th day of April, 2005.

4

5                                      _____

6                                       JAMES L. ROBART

7                                       United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    _____

25       [16]The court notes that the alleged "reasonableness" of the G-2 settlement is not a major

26  remaining issue for this court to consider in light of Federal's representation to the court on
    December 22, 2004, that it would not renew its previously briefed motion for summary judgment

27  on this issue and that the only remaining issues for summary judgment concerned the policy
    exclusions for intentional falsehoods and prior publication.  See Minute Entry, Dkt. # 508.

28

ORDER – 16